206 F.2d 227
 53-1 USTC P 9447
 LEONARD,
v.
COMMISSIONER OF INTERNAL REVENUE.
HOLT,
v.
COMMISSIONER OF INTERNAL REVENUE.
PIERCE,
v.
COMMISSIONER OF INTERNAL REVENUE.
KIPP,
v.
COMMISSIONER OF INTERNAL REVENUE.
LAUGHLIN,
v.
COMMISSIONER OF INTERNAL REVENUE.
YACKS,
v.
COMMISSIONER OF INTERNAL REVENUE.
BLUNDEN,
v.
COMMISSIONER OF INTERNAL REVENUE.
 Nos. 11723-11729.
 United States Court of Appeals
Sixth Circuit.
 June 18, 1953.
 
 John M. Hudson, Detroit, Mich, for petitioner.
 Charles S. Lyon, Charles W. Davis, Wm. D. Crampton, George F. Lynch and H. Brian Holland, Washington, D.C., for respondent.
 Before ALLEN, MARTIN, and McALLISTER, Circuit Judges.
 McALLISTER, Circuit Judge.
 
 
 1
 On petition for rehearing, we have reviewed the record and briefs of the parties on the appeal and have again considered the case in the light of the argument set forth in the petition now before us, with respect to the finding of fact of the Tax Court that petitioners, rather than their wives, earned the income here in question, and its conclusion that such income was properly taxable to petitioners.
 
 
 2
 The business ventures from which the income resulted were concerned with the purchase of motors from the government, and the sales thereof to the motor trucking industry. All of the petitioners were engaged either in the trucking business, or the distribution of trucks, or the manufacture of automotive engines. From their business experience, they learned of the need, in the trucking industry, of motors to replace those worn out during the war years; and for the sake of business profits, petitioners formed a syndicate to purchase and sell such motors, using their credit standing to make the purchases, and their business knowledge in informing the industry of the opportunity of buying the motors from them by letters to members of the industry and their other business acquaintances. From their efforts, there arose a tremendous demand in the industry for such motors, many sales being effected through the device of paying a commission of $50.00 per motor to any person instrumental in bringing about such a purchase. The response to these sales methods of the syndicate was described as 'terrific' by one of the petitioners; and the members of the syndicate soon realized a profit of $102,890.50. Petitioners were then confronted with the problem of taxes on the venture and, as one testified, wanted to give their wives some separate income of their own, knowing there would be 'some tax saving involved.' As a result, three different ventures for the purchase and sale of motors were entered into by the wives of petitioners, each wife having the same interest in each venture as her husband had in the original syndicate, although the husbands had shared among themselves in different percentages in their arrangement. The reason, however, that some of the husbands received smaller percentages than others was because, as one of them said, they did less than the others. No reason was given as to why the wives shared in the profits in their ventures according to the same percentages as their husbands had shared in theirs. The market had already been created, and petitioner considered at the time the wives' first venture was formed, that the market created by them was still in existence and available.
 
 
 3
 The motors were purchased by a corporation in which two of the petitioners were officers, and the corporation, by virtue of its agreement with the wives, retained a lien on the proceeds of the sales of the motors until the corporation was repaid the purchase money. The officers of a partnership of two of the husbands were used in the venture of the wives for the negotiation of contracts, purchases, and sales; and the so-called paper work involved in effecting retail delivery of the motors was performed by a young woman employed in the partnership of the husbands above mentioned. No sales agents were appointed because none was needed. All inquiries concerning the motors were addressed to the partnership of the two petitioners above mentioned, and the orders for delivery were made out in their office. For these services, the partnership received no compensation, but was reimbursed for its expenses.
 
 
 4
 None of the wives had any experience in the trucking business, the distribution of trucks, or the manufacture or sale of motors. One had prior business experience in a restaurant and confectionery; another, in a business which was not explicitly described. It does not appear from the record that any of the wives did anything in these ventures other than signing agreements, opening bank accounts, and signing checks. Five of the wives deposited $3,000.00 each in the bank account of the ventures, as capital; one contributed $3,000.00 of her own money; another, $3,000.00 which her husband had loaned her. There is nothing in the record to indicate that the investment of such funds was necessary or of importance in carrying out the ventures. As a result of, and in the course of their business experience, petitioners secured the information and learned of the situation with regard to the particular need of the trucking industry for motors at the time in question. They utilized their knowledge, created the market, invested the transactions of purchase with their own credit and reliability, formed the business structure to carry out the project successfully, devised its means of operation, provided the agency of performance, and, as a result, accumulated substantial income for themselves. They then had their wives form an association to avail themselves of petitioners' experience, knowledge, record of past performance, the business structure, means of operation, and agency of performance, as well as the market created through their efforts, and to receive the income for themselves with no more than a token contribution to its production. If they wished to provide their wives with income by way of gift, petitioners themselves would, of course, be subject to the payment of income tax thereon. The Tax Court held that petitioners could not provide their wives with income by the means above described without likewise paying income tax thereon, in the light of Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 534, 90 L.Ed. 670, in which, in the language of the court, the income in question 'was in fact earned by the husband' and received by the wife 'only by reason of her marital relationship'.
 
 
 5
 In our opinion, the fact that the wives entered into these ventures did not have the result that the income derived from them was income of the wives. The fact that the wives shared in the profits in their ventures in the same proportion as the husbands did in theirs, although the husbands' shares were based upon the value of their contributions to their ventures, while the wives' shares were not, together with the coincident circumstance that there was a motive on the part of the husbands to reduce their income taxes, lends strength to the inference drawn by the Tax Court that the income was that of the husbands. See Commissioner v. Tower, supra.
 
 
 6
 From a consideration of the foregoing, we are of the view that there was substantial evidence, on the record as a whole, to sustain the finding of the Tax Court that petitioners, rather than their wives, earned the income in question. In the receipt of the income, the wives depended upon the grace and sufferance of petitioners in being allowed to reap the results of the efforts and enterprise of their husbands, or, as stated by the Tax Court, the husbands produced the income, while their wives collected it.
 
 
 7
 In accordance with the foregoing, the petition for rehearing is denied.